Dennis **GLICK**, Appellant,

v.

Dr. F.M. **HENDERSON**, et al., Appellees.

No. 87–2376.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1988.

Decided Aug. 25, 1988.

Jo Ann L. Goldman, Little Rock, Ark., for appellant.

Alan R. Humphries, Pine Bluff, Ark. and C. Kent Jolliff, Little Rock, Ark., for appellees.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSON,* Senior District Judge.

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

HANSON, Senior District Judge.

Dennis P. Glick appeals from the district court's dismissal, without prejudice, of his 42 U.S.C. § 1983 action seeking declaratory and injunctive relief and damages for appellees' alleged failure and refusal to protect the inmates of the Arkansas Department of Corrections (A.D.C.) from exposure to Acquired Immune Deficiency Syndrome (AIDS). We affirm.

Appellant Glick and two other inmates filed this action on November 13, 1985 alleging that the sampling of blood from blood plasma donors had revealed that at least five inmates of the A.D.C. tested seropositive for the virus which causes AIDS. A seropositive test shows that a person has been exposed to the AIDS virus but does not indicate whether the person has or will acquire AIDS or AIDS–Related Complex. The inmates also alleged that the A.D.C. was neither testing all inmates and personnel for exposure to the AIDS virus, nor segregating all those who did test seropositive. According to the complaint, the combination of these factors, along with the presence of practicing homosexuals within the A.D.C., placed the inmates in immediate danger of contracting AIDS because of the daily interactions which take place among inmates and A.D.C. officials at the A.D.C.

Named as defendants in the suit were: A.L. Lockhart, A.D.C. Director; Woodson D. Walker, chairman of the Arkansas Board of Corrections; Larry B. Norris, Warden of the Maximum Security Unit of the A.D.C.; Dr. F.M. Henderson, of Health Management Associates; and the Arkansas Board of Corrections. The suit was brought against the defendants in both their individual and official capacities. As relief the inmates sought $4,000,000 in damages and an injunction commanding the defendants to: (1) administer tests to all inmates and staff members to discover the presence of AIDS or the AIDS virus; (2) hospitalize all inmates with the disease AIDS; (3) discharge all staff members with the disease AIDS; (4) segregate all inmates with the AIDS virus from all other A.D.C. inmates not infected; (5) remove any and all staff members with the AIDS virus from all contact with inmates and staff members not infected; and (6) report all detected cases of AIDS or the AIDS virus to the U.S. Health Department, the Arkansas Health Department, the Court and the plaintiffs.

On October 7, 1986 the United States District Court for the Eastern District of Arkansas, the Honorable William R. Overton presiding, filed an order dismissing defendants Walker, Lockhart and Norris from the case, ruling that the inmates had "failed to allege sufficient involvement or knowledge to state a § 1983 claim against" these three defendants. The court, however, did grant a motion for the appointment of counsel for the inmates with regard to the case against the remaining defendants.

On September 28, 1987, the action itself was dismissed, without prejudice, in an order filed by the Honorable G. Thomas Eisele. In the order Judge Eisele first ruled that the Eleventh Amendment to the United States Constitution required the dismissal of the Arkansas Board of Corrections from the suit, thereby leaving Dr. F.M. Henderson as the only remaining defendant. The Court then noted that as Dr. Henderson was no longer the health care provider for the Arkansas prison system the court would be unable to provide the inmates with any of the injunctive relief requested against the A.D.C. Accordingly, the court dismissed the present action ordering that the inmates "may refile their claims in a new lawsuit, within one year, without prejudice, naming the proper parties."

Appellant Glick now appeals the dismissal of the suit on a number of grounds. The other plaintiffs named in the original action have not joined him on appeal.

## Discussion

■ Glick's complaint presents this Court with a difficult task. On the one hand, this Court can envision situations in which courts would be warranted in involving themselves in the administration of a prison in order to protect inmates from

practices conducive to the spread of AIDS. On the other hand, Glick's complaint, as it is framed, asks this Court to involve itself in a medical controversy and to dictate medical guidelines in an area where the medical profession has not yet spoken, a task this Court is hardly suited for. In reviewing these competing factors several aspects of this case lead us to affirm the district court's dismissal of Glick's case.

The first such factor is the total inadequacy of the complaint as it is framed. It does not even bear the elements of notice pleading. There is not the slightest indication of what the officials are doing or not doing that is not in accord with proper practice as established by medical guidelines.

The second factor is that the risk appellant alleges is based on unsubstantiated fears and ignorance. The basis of his complaint are the allegations that appellant faces a pervasive risk of acquiring AIDS because: (1) he comes into contact with the sweat of other inmates during work detail; (2) he is subject to bites from mosquitoes which have bitten other inmates; (3) he has been sneezed on by a known homosexual; (4) A.D.C. officials untested for AIDS prepare his food; and (5) the A.D.C. regularly transfers prisoners from cell to cell throughout the prison. The possibility of the transference of AIDS through these means is simply too remote to provide the proper basis for appellant's complaint as it is currently framed.[1] *See generally, United States v. Moore*, 846 F.2d 1163, 1168 (8th Cir.1988) (holding possibility of AIDS transmission by means of a human bite

"too remote" in a legal context "to support a finding that the mouth and teeth may be considered a deadly and dangerous weapon in this respect", although that case held that the "mouth and teeth were used as a deadly and dangerous weapon" in the factual situation therein involved).

The third factor which needs to be mentioned before we turn to the specific challenges appellant raises is the fact that the district court's dismissal of the case was without prejudice. Thus, Glick has not been jeopardized in any way. Instead, he has just been told that he must allege more sufficiently and clearly all possible facts which demonstrate the constitutional deprivation or injury, if any, which he has suffered as a result of the conditions of his confinement, and that he must do so against the proper parties. With these three factors in mind we now turn to the specific assertions appellant raises.

1. *The Dismissal of Walker, Lockhart and Norris.*

█ Glick's first challenge is to the dismissal of defendants Walker, Lockhart and Norris from the suit. Glick charges that this dismissal was improper because the three each had a "legal responsibility in this matter" and because they each acted in a way deliberately indifferent to "a pervasive risk of harm" to him.

We agree with Glick that he could have a colorable claim under § 1983 if he could show that there is "a pervasive risk of harm to inmates" of contracting the AIDS virus and if there is "a failure of prison officials to reasonably respond to that

---

1. In a recent report by the United States government, sent to every household in this nation because of its importance, it is conclusively stated that "the AIDS virus is hard to get and is easily avoided. You won't just 'catch' AIDS like a cold or flu because the virus is a different type. The AIDS virus is transmitted through sexual intercourse, the sharing of drug needles, or to babies of infected mothers before or during birth. **You won't get the AIDS virus through everyday contact** with the people around you in school, in the workplace, at parties, child care centers, or stores. You won't get it by swimming in a pool, even if someone in the pool is infected with the AIDS virus.... **You won't get AIDS from a mosquito bite.**

The AIDS virus is not transmitted through a mosquito's salivary glands like other disease such as malaria or yellow fever. You won't get it from bed bugs, lice, flies or other insects, either. **You won't get AIDS from saliva, sweat, tears, urine or a bowel movement. You won't get AIDS from a kiss. You won't get AIDS from clothes, a telephone or from a toilet seat.** It can't be passed by using a glass or eating utensils that someone else has used. You won't get the virus by being on a bus, train or crowded elevator with a person who is infected with the virus, or who has AIDS." *U.S. Dep't of Health and Human Services, Pub. No. (CDC) HHS–88–8404, Understanding AIDS,* p. 2 (all emphasis in original) (1988).

risk." *See Martin v. White*, 742 F.2d 469, 474 (8th Cir.1984). However, we disagree that this claim presents such a situation. As already noted the risks being alleged by Glick are unsubstantiated fears unrecognized by the mainstream medical community. Accordingly, we are unwilling to term as unreasonable the prison officials' decision not to institute a wholesale AIDS testing and segregation program in response to these specific fears. Thus it was not error to dismiss these three defendants.

2. *The Dismissal of the Arkansas Board of Corrections.*

Glick's second challenge is to the dismissal of the Arkansas Board of Corrections from the suit. He bases this challenge on two grounds. First, he argues that all the members of the Arkansas Board of Corrections were sued in their individual capacities in the complaint, and thus not subject to any eleventh amendment bar. Secondly, he asserts that the Arkansas Board of Corrections is exempt from the eleventh amendment bar under the exceptions discussed by the Supreme Court in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). We find both grounds to be without merit.

■ The first ground is without merit because even if Glick's original action were construed as naming all of the members of the Arkansas Board of Corrections individually, these parties would not be liable to Glick for the very reasons discussed above with regard to defendants Walker, Norris and Lockhart. There simply has been no allegation of individual involvement or indifference to a pervasive risk sufficient to hold these parties individually liable under § 1983.

The second ground is without merit because neither of the two exceptions discussed by the Supreme Court in *Pennhurst* apply to this case. The first exception found in *Pennhurst* is that "Congress has power with respect to rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity." 465 U.S. at 99, 104 S.Ct. at 907. However, this exception applies only when there is "an

unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.' " *Id.* Accordingly, as the Supreme Court has already held that neither the history nor the text of 42 U.S.C. § 1983 expresses any such intent, this exception is irrelevant to this case. *See Quern v. Jordan*, 440 U.S. 332, 342–45, 99 S.Ct. 1139, 1146–47, 59 L.Ed.2d 358 (1979).

The second exception discussed in *Pennhurst* is that based on the case *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which it was held that a federal court could issue injunctive relief requiring a state official to refrain from violating federal law. The *Pennhurst* Court ruled that this exception was based on the theory that because a state is without power to authorize a state official to act in violation of federal law, any state official taking such actions is acting beyond his official authority and is thereby "stripped of his official or representative character." *Pennhurst*, 465 U.S. at 104, 104 S.Ct. at 910. Thus, sovereign immunity does not apply.

■ However, a state agency which is the sole creation of the state has no separate identity, and thus cannot be stripped of it's official character. Accordingly, an injunction against the Arkansas Board of Corrections would be unconstitutional without the state's consent as "the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (holding that a federal court's injunction against the Alabama Board of Corrections was unconstitutional) (1978).

3. *The Claim Against Dr. Henderson.*

■ Appellant's third challenge is to the dismissal of Dr. Henderson from the suit. The District Court dismissed Henderson, who was formerly in charge of health care at appellant's prison, on the grounds that as Henderson was no longer employed at the prison the injunctive relief sought by appellant would be impossible to grant with

Henderson as the only defendant. Accordingly, the court dismissed the case without prejudice, specifying that appellant had a year to refile his suit against the proper parties. Appellant charges that this dismissal was improper because he was also seeking money damages against Henderson and thus, he argues, he could have been granted relief if he would have prevailed.

Once again, we disagree. The specifics of this case do not present a situation in which money damages would have been properly awardable against Dr. Henderson. Thus, the District Court's dismissal of the case, without prejudice, was appropriate.

4. *The Ineffectiveness of Counsel Claim.*

■ Appellant's last challenge on appeal is a charge tht he was prejudiced by the alleged ineffectiveness of his appointed counsel. This claim also fails as "[t]here is no constitutional or statutory right for an indigent to have counsel appointed in a civil case.... It of course follows that there is no constitutional or statutory right to effective assistance of counsel in a civil case." *Watson v. Moss,* 619 F.2d 775, 776 (8th Cir.1980). Glick's remedy for any ineffective assistance of counsel is a suit against his attorney for malpractice, not a new trial—the same remedy he would be entitled to in a civil case with private counsel. *See Id.*

## Conclusion

It is the rare case in which a court should venture forth to establish medical procedures and guidelines in an area where the medical profession has not yet been able to ascertain what they should be. A thorough review of the facts and pleadings in this case indicates that this case does not present such a situation.

Accordingly, because all of appellant's challenges are without merit, we affirm the District Court's dismissal, without prejudice, of this case.

McMILLIAN, Circuit Judge, concurring.

I concur with the result reached by the majority only because the dismissal is without prejudice to the filing of a new lawsuit. I write separately to emphasize that this dismissal without prejudice extends to the dismissal of defendants Walker, Lockhart, and Norris.

The district court granted the motion of these defendants to dismiss on the ground that the complaint had "failed to allege sufficient involvement or knowledge to state a § 1983 claim against" them. Order of October 6, 1986. In support, the district court cited *Glick v. Sargent,* 696 F.2d 413 (8th Cir.1983) (per curiam), a section 1983 action alleging constitutional violations in a prison disciplinary action. In that case, this court concluded that no cause of action was stated against the warden because his responsibility for overseeing prison operations did not render him liable for the outcome of disciplinary proceedings in which he played no role. *Id.* at 414–15.

In contrast to that case, we are not now considering a matter in which these officials have no role or knowledge. The responsibility for making and enforcing policies to prevent the spread of AIDS in the prison setting lies with the highest-level prison officials, in conjunction with their medical advisors. The majority acknowledges the possibility of a colorable claim against these officials, but concludes that, here, Glick has not sufficiently shown a pervasive risk of harm or the absence of a reasonable official response, a conclusion I concur in.

As the majority notes, most of Glick's allegations concerning the risk of contracting AIDS are unfounded, according to current medical thought. The record, however, suggests a claim that the prison's policy on housing and transferring "high-risk" inmates exposes him to an unreasonable danger of sexual assault by an AIDS carrier or victim. I believe that such a claim alleged with sufficient specificity in a new lawsuit could withstand a motion to dismiss.